**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JASON J. PURCELL,**

                          **Plaintiff,**

              v.                                          1:07-CV-834
                                                           (FJS/DRH)

**CSX TRANSPORTATION, INC.,**

                          **Defendant.**
_____

**APPEARANCES**                                                          **OF COUNSEL**

**THE LAW OFFICES OF**                        **MICHAEL FLYNN, ESQ.**
**MICHAEL FLYNN, P.C.**                        **MARC T. WIETZKE, ESQ.**
1205 Franklin Avenue
Suite 250
Garden City, New York 11530
Attorneys for Plaintiff

**ECKERT, SEAMANS,**                           **LAWRENCE R. BAILEY, JR., ESQ.**
**CHERIN & MELLOTT, L.L.C.**
10 Bank Street
Suite 1061
White Plains, New York 10606
Attorneys for Defendant

**HODGSON RUSS, LLP**                          **NOREEN D. GIMMICK, ESQ.**
677 Broadway
Suite 301
Albany, New York 12207-2884
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 17, 2007, after sustaining an injury at work, Plaintiff brought this action

pursuant to the Federal Employers Liability Act ("FELA"), alleging that his injuries were caused

by Defendant's failure to provide a reasonably safe place to work and through Defendant's negligence. *See* Complaint at ¶¶ 1-14. The matter was tried before a jury between June 16 and 19, 2009. On June 19, 2009, the jury returned a verdict finding Defendant 32% liable for Plaintiff's broken arm and awarded, before reduction for comparative negligence, $312,500. The jury allocated the damages as follows: (1) lost past wages, $4,895.00; (2) lost future wages, $4,020.00; (3) pain and suffering from the date of the accident to the present, $303,585.00; and (4) future pain and suffering, $0.00. After reduction for comparative negligence, the jury awarded Plaintiff $100,000.

Currently before the Court is Plaintiff's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Weight of the evidence

Plaintiff asserts that he is entitled to a new trial on damages because (1) the award of $4,895 for past lost wages is inadequate and against the weight of the evidence; (2) the award of $4,020 for future lost wages is inadequate and against the weight of the evidence; and (3) the jury's failure to award anything for future pain and suffering is inadequate and against the weight of the evidence.

#### *1. Standard of review*

A jury's verdict should "rarely be disturbed," and a new trial is properly granted, pursuant to Rule 59 of the Federal Rules of Civil Procedure, only if the verdict is so against the weight of

the evidence as to constitute a "'seriously erroneous result,'" or "'a miscarriage of justice.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (quotation omitted). As the standard implies, a court deciding a Rule 59 motion may weigh the evidence introduced at trial, and additionally, is not required to view the evidence in the light most favorable to the "'verdict winner.'" *Id.* at 635 (quotation omitted); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (citation omitted). In weighing the evidence, however, the court "should not ordinarily ignore the jury's role in resolving factual disputes." *MacMaster v. City of Rochester*, No. 05-CV-6509, 2009 WL 63045, *6 (W.D.N.Y. Jan. 6, 2009) (citation omitted); *see also DLC Mgmt. Corp.*, 163 F.3d at 134.

### *2. Past lost wages*

Plaintiff asserts that his accident took place on March 11, 2006, with the initial surgery taking place that same day and the follow-up surgery occurring on September 1, 2006. Plaintiff returned to work in January of 2007. Moreover, Plaintiff concludes that he earned an average of $4,605.27 per month in the twelve (12) months prior to the accident. Finally, Plaintiff claims that Defendant neither argued that he was out of work longer than necessary for his injuries nor did Defendant call a doctor to refute the treatment or recovery process for Plaintiff's injuries. As such, Plaintiff claims that the jury's award of $4,895 for past lost wages was clearly inadequate in light of the uncontroverted testimony showing that Plaintiff was out of work for nearly ten (10) months because of his injuries.

Contrary to Plaintiff's assertions, this award was not clearly inadequate in light of the undisputed testimony. As Defendant correctly points out, Plaintiff was required to prove not

-3-

only that he suffered lost wages, but also that his injury caused those lost wages. Plaintiff never offered proof that his injury required him to remain absent from work for the full ten-month period. In fact, Plaintiff asserts that the future surgery that Dr. Uhl, Plaintiff's treating physician, recommends he have is "similar" to the surgery he previously underwent, which caused his prolonged absence from work. *See* Plaintiff's Memorandum of Law at 1. Dr. Uhl testified that Plaintiff would need six-to-eight weeks recovery time after this "similar" surgery before he could return to work. *See* Transcript of Deposition of Dr. Richard Uhl dated June 9, 2009 ("Uhl Tr."), at 35. Dr. Uhl also stated that Plaintiff would be able to perform desk work or "light activities" at work during the time he recovered from this surgery. *See id.* at 44-45. Moreover, Plaintiff did not offer any testimony regarding his ability to perform "light activities" or desk work after his initial surgeries. Considering this evidence, or lack thereof, it was perfectly rational for the jury to conclude that Plaintiff did not require the entire ten-month period to recover before he could return to work when it would only take him six-to-eight weeks to recover from a "similar" surgery.

Based on the foregoing, the Court finds that the jury was free to conclude that Plaintiff's injury did not cause all of his past lost wages but, rather, that, although the injury caused some of his lost wages, Plaintiff was, nonetheless, capable of working after an initial recovery period. *See, e.g., Litras v. Long Island R.R.*, No. 02-CV-5168, 2006 WL 1455466, *7-*8 (E.D.N.Y. May 23, 2006).

### 3. Future lost wages

Plaintiff argues that the jury's award of $4,020 for future lost wages is inadequate and against the weight of the undisputed evidence. He asserts that the undisputed evidence establishes that the jury found that he would have the future surgery; that the future surgery would require six to eight weeks of recovery time; and that he earned an average of $5,473.55 per month for the first three months of 2009, prior to the accident.

As discussed, Dr. Uhl testified that, if Plaintiff underwent the recommended surgery, he would require six to eight weeks of recovery time. *See* Uhl Tr. at 35. Moreover, Dr. Uhl stated that Plaintiff would be able to work in a desk position or engage in other "light activities" during this recovery time. *See id.* at 44-45. Accordingly, it was not against the weight of the evidence for the jury to conclude that Plaintiff would not be required to miss a full six-to-eight weeks of work because of this recommended surgery.

Moreover, as discussed below, the jury was free to conclude that Plaintiff would not undergo the future surgery given the fact that Dr. Uhl first recommended this additional surgery more than two years before the trial and Plaintiff had yet to show any serious commitment to undergoing this additional procedure. Therefore, the jury could have awarded future lost wages to compensate Plaintiff for the time that he would miss work during his regularly scheduled visits to his physician.

Based on the foregoing, the Court concludes that the jury's award for future lost wages was not against the weight of the evidence.

**B.   Future pain and suffering/Inconsistent verdict**

Pursuant to Rule 49 of the Federal Rules of Civil Procedure, where a verdict is truly irreconcilable and the jury has already been discharged, a district court may, but is not required to, order a new trial. *See Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 53 (2d Cir. 1992) (citations omitted). The court may deem an objection to an allegedly inconsistent verdict waived if the party failed to object to the inconsistency prior to the discharge of the jury. *See id.* at 54; *see also Haskell v. Kaman Corp.*, 743 F.2d 113, 123 (2d Cir. 1984) (holding that, "'[t]o allow a new trial after the objecting party failed to seek a proper remedy [before the jury was excused] would undermine the incentives for efficient trial procedure and would allow the possible misuse of Rule 49 . . .'" (quotation and other citation omitted)). There is no *per se* rule regarding the application of waiver in the context of allegedly inconsistent verdicts; rather, the courts must evaluate whether waiver is appropriate on a case-by-case basis. *See Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir. 1994).

In *Lavoie*, the Second Circuit affirmed the district court's holding that the defendant waived his challenge to the alleged jury verdict inconsistency where, after the jury returned the alleged inconsistent verdict, the district court polled the jurors individually and still the defendant raised no objection. *See Lavoie*, 975 F.2d at 54. Similarly, in *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335 (2d Cir. 1988), the Second Circuit upheld a finding of waiver where the jury returned an ambiguous verdict, but the plaintiff failed to object prior to the jury's discharge. *See id.* at 1367; *see also Trinidad v. Am. Airlines Inc.*, No. 93 Civ. 4430, 1997 WL 79819, *2 (S.D.N.Y. Feb. 25, 1997) (holding that, "if the alleged inconsistency is as blatant as plaintiff suggests, plaintiff cannot . . . claim that the inconsistency was unnoticeable at the time of the verdict and therefore that plaintiff was justified in his delay. By failing to object to

the jury's verdict prior to its discharge, plaintiff waived his right to object.").

Assuming that the award of future lost wages is inconsistent with the denial of a future pain and suffering award, Plaintiff waived any objection. Had Plaintiff objected to this claimed inconsistency before the Court discharged the jury, the Court could have immediately remedied the alleged inconsistency. *See Litras*, 2006 WL 1455466, at *9. "[I]t is hard to see why [Plaintiff] should be allowed to sit by silently yet be granted a new trial" when a verdict that had "no rational basis" could have been easily remedied if a timely objection had been made. *See Litras*, 2006 WL 1455466, at *9 (holding that "'[w]aiver is particularly appropriate where counsel is or should be aware of the inconsistency in the verdict, and where resubmission to the jury would resolve the ambiguity,' . . . ." (quotation omitted)); *see also Litras v. Long Island R.R.*, 226 Fed. Appx. 31, 33 (2d Cir. 2007) (holding that, "[t]o the extent that [the plaintiff] contends that the jury verdict was inconsistent because it awarded him damages for future medical expenses but not future pain and suffering, [the plaintiff] waived this argument by failing to raise it before the jury was dismissed" (citations omitted)).

Based on the foregoing, the Court finds that Plaintiff waived his inconsistent verdict argument. *See Lockard v. Mo. Pac. R.R. Co.*, 894 F.2d 299, 304 (8th Cir. 1990) (holding that "[t]he purpose of the rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury. . . . This prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict" (citation omitted)). Even if Plaintiff had not waived this argument, the verdict is not irreconcilable. In assessing whether a jury's answers are inconsistent, "a reviewing court is to adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Fiacco v. City of Rensselaer*,

783 F.2d 319, 325 (2d Cir. 1986) (citations omitted).

In the present matter, Plaintiff asserts that "there is no rational basis for the jury finding that plaintiff would undergo future surgery (as demonstrated by its award of Future Lost Wages) and yet award no amount for Future Pain and Suffering in connection with that surgery, particularly where it awarded over $300,000 for past pain and suffering that involved similar surgery." *See* Plaintiff's Memorandum of Law at 1.

The Court instructed the jury that,

> [t]o determine the award for lost future earnings, you must determine whether or not it is reasonably certain that Plaintiff will undergo the future surgery, about which you have heard evidence, that will render him unable to work. You must then determine Plaintiff's wages during the time you find that he will be unable to work.

*See* Jury Instructions at 13-14. In the interrogatory submitted to the jury regarding lost future wages, the Court posed the following question: "Do you find that Plaintiff is entitled to recover damages for lost future wages due to Plaintiff undergoing surgery?" *See* Jury Verdict at Interrogatory No. 7. As discussed below, contrary to Plaintiff's assertions, the Jury Instruction and Jury Verdict Interrogatory did not *require* the jury to find that Plaintiff would undergo another surgery before it could award a nominal amount for future lost wages.

Plaintiff testified, as did Dr. Uhl, that he continued to see Dr. Uhl for treatment of his arm. The jury may have awarded lost future wages in response to this continued treatment and not as an award for this elective surgery that had not yet been scheduled – more than three years after the initial two surgeries. *See* Uhl Tr. at 54.

In *Hoyte v. Nat'l R.R. Passenger Corp.*, No. 04 Civ. 5297, 2006 WL 2053383 (S.D.N.Y. July 24, 2006), the jury awarded a limited amount for future medical expenses but refused to

award anything for future pain and suffering. *See id.* at \*2.  The court held that this award was reconcilable because

> [t]he jury could have reasonably concluded, for example, that the injuries actually sustained by plaintiff were likely to require limited treatment for approximately one year, while also concluding that plaintiff would not continue to experience any conscious pain or suffering . . . .  A reasonable jury could also have concluded that plaintiff would require continued medical monitoring of his condition for approximately one year, at a cost of $3,000, while also finding that plaintiff had failed to prove, by a preponderance of the evidence, that he would experience any future pain or suffering.  Or, the jury might have concluded that any emotional or physical pain suffered by plaintiff could be alleviated completely with $3,000 worth of medical treatment.

*Id.* (internal citations and footnote omitted).

Here, as in *Hoyte*, the jury could have awarded money for future lost earnings to compensate Plaintiff for his regularly scheduled medical appointments that would cause him to miss work.  Moreover, the jury was free to discredit Plaintiff's limited testimony regarding the amount of pain from which he was currently suffering.  In fact, Dr. Uhl testified that there was now stability in the wrist joint and "[t]he alignment of the bones of the wrist appear to be intact in terms of relationships of length and the congruency of the distal radial-ulnar joint." *See* Uhl Tr. at 41-42.  He also stated that, despite this finding, Plaintiff still complained of pain in that joint. *See id.*  Such testimony could lead the jury to discount Plaintiff's subjective complaints of pain and believe that the first series of surgeries successfully eliminated any pain. *See Manes v. Metro-North Commuter R.R.*, 801 F. Supp. 954, 962 (D. Conn. 1992) (holding that, in light of the subjective nature of the plaintiff's complaints – which included a hard to diagnose and disprove injury – "it is entirely reasonable and consistent for the jury to conclude that such an injury was compensable for past and future medical expenses and lost wages but not for pain and

suffering" (footnote omitted)).

Moreover, contrary to Plaintiff's assertion, the jury was not required to find that he would undergo future surgery as a condition precedent to awarding future lost income. The Court simply directed the jury's attention to one situation that would require Plaintiff to take a leave from work. *See* Jury Instructions at 13-14. The jury was free to conclude that no such surgery would occur but that Plaintiff would still require other medical attention, as evidenced by his regular appointments with his treating physician, requiring Plaintiff to take time off from work. As in *Manes*, it would have been rational for the jury to conclude that Plaintiff would not elect to undergo the additional surgery – a surgery that was first recommended more than two years prior to the trial.

Accordingly, even if Plaintiff had not waived this argument, the Court finds that the jury verdict was not irreconcilable.

### C.     The jury's apportionment of liability

Plaintiff asserts that "[t]he jury's allocation of 32% of the liability on defendant and 68% of the liability on plaintiff cannot stand and must be retried given the transparent manipulation of the dollar figures in the special interrogatories." *See* Plaintiff's Memorandum of Law at 2.

Plaintiff cites no authority, and the Court was unable to find any, which would require a new trial in this situation. The record fully supports the jury's finding that Defendant was only 32% liable for Plaintiff's injury.

As such, the Court finds that the jury's apportionment of liability is not against the weight of the evidence.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a new trial is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 21, 2010
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge